## SAMUEL T. STILSON, Impl'd, etc.

### v.

## HENRY H. HARGER ET UX.

ALLEGATIONS OF A BILL MUST BE SUPPORTED BY PROOF.—This was a bill in chancery, brought by appellee and wife, to compel the cancellation and surrender of a certain note and mortgage held by appellant. The court finds that the preponderance of evidence is against the allegations of the bill, and the case is reversed and bill dismissed without prejudice.

APPEAL from the Circuit Court of LaSalle county; the Hon. EDWIN S. LELAND, Judge, presiding.

Mr. E. F. BULL, for appellant.

Messrs. RICHOLSON & SNOW, for appellees.

SIBLEY, P. J. In March, 1867, Henry Harger, being the owner of a 170 acre farm in DeKalb county, and pressed for means to make such a defense to some suits pending in the Federal Court, at Chicago, respecting the title to or liens upon the property as he thought necessary, in order to obtain the desired means, conveyed the land to Samuel T. Stilson, by deed of general warranty, absolute upon its face, though Harger testified that it was intended as a mortgage to secure present and future advancements by Stilson.

This allegation is, however, denied by the latter in very positive terms, who asserts the sale was a complete and *bona fide* one, without any condition. That he advanced $500 to

Stilson v. Harger et ux.

Harger, and took the farm subject to the suit and incumbrances upon it, including costs and attorney's fees.

That he was at considerable expense in defending the suit in the U. S. Court, where a decree was finally rendered for a portion of the demand claimed, which he paid off, together with a large amount of costs and attorneys' fees.   The DeKalb county farm was afterward, in 1870, sold and conveyed to Moses Bartlett for about $6,000, $2,000 down and notes given for the balance, which were subsequently collected by Stilson.   In March, 1871, Harger purchased of a Mr. Wordan, a 40 acre tract in LaSalle county, for some $2,152, which it appears was subject to an incumbrance held by Samuel C. Wiley for $1,000 or $1,100.   Harger states that Stilson at the time was owing him upon their dealings a balance sufficient to pay for the LaSalle county land, including the mortgage held by Wiley, which he avers Stilson agreed to satisfy.

At the time of this trade with Wordan, Harger and wife gave to Stilson a note secured by a mortgage upon the land purchased of Wordan, for $1,000.   Harger testified that this mortgage was given to Stilson to secure him from any liability he may have incurred by means of having executed a deed with covenants of warranty to the title of the DeKalb county farm, ten acres of which had been previously sold for taxes, and a deed executed upon the certificate of purchase issued.

This is a bill in chancery, brought by Harger and wife against Stilson, to have the mortgage and note given by the former to the latter surrendered and canceled, and the Circuit Court decreed according to the prayer in the bill.   Stilson appealed to this court, and has assigned two errors: one, for refusing to dismiss complainant's bill, and the other for ordering the note and mortgage held by Stilson to be surrendered up and canceled.

The record is quite voluminous, but the testimony can be reduced to within a pretty narrow compass.   Harger's evidence substantially supports the allegations of the bill, and in some unimportant particulars is perhaps corroborated by the testimony of other witnesses in the case.   But upon the main question, that the only consideration for the note and mortgage to

Stilson was simply to indemnify him against any liability that might arise from his having executed a deed with covenants of warranty for the DeKalb county farm, the testimony of Harger remains unsupported by any material evidence, and is flatly contradicted by Stilson in every particular, who swears that at the time of the purchase of the land from Wordan by Harger, that he did not owe the latter a single dollar. But as Harger was without means, and desired to purchase the property, he voluntarily, as a mere gift, contributed $1300 toward the purchase, and loaned Harger $1,000 to make up the balance required, taking from him a note and mortgage to secure its re-payment. That he knew nothing of the Wiley mortgage until long after the sale, and never agreed with Harger or any one else to pay it off.

In respect to the allegation in the bill that Harger was not indebted to Stilson on the execution of the note and mortgage in question, and that the only consideration for them was the covenants of warranty in the deed by Stilson to Bartlett for the DeKalb county farm, Stilson is supported in the denial of this charge by the testimony of the witness, Chase (a justice of the peace before whom Harger upon expressing some dissatisfaction relative to their former arrangement, desired to go for the purpose of having a more correct figuring), who states that in December, 1873, Harger and Stilson came to his office to look over their matters in difference. That they commenced comparing their accounts, and getting into some dispute, and Stilson left the office.

After Stilson left, Chase, at the instance of Harger, took down the items of account existing between the parties as Harger gave them to him, allowing to each interest, as directed. The result upon his figuring showed that Harger owed Stilson $676, and Harger remarked that that was the way their matters stood.

Chase also states that he drew the mortgage from Harger and wife to Stilson, and heard nothing at the time said by Harger about Wiley's having a mortgage on the place, nor that the consideration of the instrument then executed was fictitious, but understood it to be *bona fide*.

Stilson v. Harger et ux.

Haight, who furnished the money to Stilson, that went to pay Wordan for the forty-acre tract, testified that he understood Stilson was to take a mortgage from Harger on the land for the money furnished, and his impression was that Harger conveyed the idea that neither Stilson nor himself knew of the Wiley claim.

The proof relied on to contradict Stilson, that he afterward told Wiley if his mortgage was good he would pay it off, loses much of its force when it is recollected that this conversation took place a year or more after the sale by Wordan to Harger, and after Wiley had threatened to foreclose his mortgage. Under such circumstances it would not be at all strange that he should make the promise to pay off the claim, although he was under no obligation to do so. Since the Wiley mortgage had priority over his own, it became necessary for him to extinguish the debt, or permit the land to be sold to satisfy the lien upon it.

If the consideration of the note and mortgage executed by Harger and wife to Stilson was as the former has stated it, the reason given for not having it recited correctly in the instrument itself is far from being satisfactory. But suppose it to be as set out in the bill of complaint, still the court erred in decreeing a surrender and cancellation of them until some proof was made that Stilson had been released or discharged from any liability upon his covenant of warranty, in the deed to Bartlett for the DeKalb county farm. But after a careful examination of all the testimony in the record, we are not convinced that the evidence is sufficient to overthrow the *prima facie* case made by the note and mortgage, and the decree of the circuit court is therefore reversed, and the complainant's bill dismissed without prejudice.

Decree reversed.

LELAND, J., having tried this case in the Circuit Court, took no part in this decision.